Bryan E. Lessley, OSB No. 92081
Assistant Federal Public Defender
859 Willamette Street, Suite 200
Eugene, OR 97401
*Bryan_Lessley@fd.org*
(541) 465-6937 (telephone)
(541) 465-6975 (facsimile)

Attorney for Defendant


## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | 6:11-CR-60097-HO |
| Plaintiff, | |
| vs. | DEFENDANT'S MOTION TO COMPEL DISCOVERY |
| CODY CRAWFORD, | |
| Defendant. | |

Defendant Cody Crawford, by and through counsel, hereby moves that the government be compelled to produce the following documents, items and things.

1.    The following data, records, recordings, and things related to DNA testing of any object. This request includes, but is not limited to, the specific data, both paper and electronic, lab notes and records, and other documentation, of the flashlight allegedly located at the scene of the crime, the DNA results for which are reported in a report of an

Page 1 - DEFENDANT'S MOTION TO COMPEL DISCOVERY

examination from the Federal Bureau of Investigation dated January 26, 2011. This request

also includes, but is not limited to, the same information relating to DNA testing of a bottle

cap reported in an FBI report of investigation dated April 2, 2012. More generally, this

request requests the same information as pertains to any object for which DNA testing

produced a result suitable for matching purposes, whether or not a person was identified as

a match. The items requested by this request are more particularly described below:

A.    **Case File:** A complete copy of the case file including all records, bench notes, phone logs etc. made by the laboratory in connection with this case. If the file includes photographs, please include photographic quality copies.

B.    **Laboratory Protocols:** A copy of all standard operating protocols (SOPs) used in connection with the testing in this case especially DNA and analysis and interpretation guideline. To minimize any burden of duplicating these items, we invite you to provide them in electronic form.

C.    **Work Instructions:** All work instruction which pertain to DNA analysis and interpretation. This includes all memos, guidelines, protocols, and instructions regarding mixture analysis and interpretation, as well as instructions concerning report statistics and report language.

D.    **Chain of custody and current disposition of evidence:** Copies of all records that document the treatment and handling of biological evidence in this case, from the initial point of collection up to the current disposition. This information should include documentation which indicates where and how the materials were stored (temperature and type of container), the amount of evidence material which was consumed in testing, the amount of material which remains, and where and how the remaining evidence is stored (temperature and type of container).

E.    **Quantification:** Concentration and quantity of DNA extracted from each case sample clearly labeled to indicate which sample is represented, along with any examiner notes.

F.    **Electropherograms:** Printouts of relevant electropherograms with allele calls and RFU for each peak, please clearly label to indicate which sample is represented on each page, along with any examiner notes.

G.    **Software:**  A list of all commercial software programs used in the DNA testing in the case, including name of software program, manufacturer and version used in this case.

H.    **Macros:**  If the results produced by the software are dependent on the instructions contained in macros, copies of any macros used.  (For analyses performed with GeneScan and Genotyper, these macros are contained in Genotyper output files in order to allow analysts to interpret the results. Simply providing a copy of the Genotyper output files in response to request 10 will satisfy this request as well.

I.    **STR frequency tables:**  Copies of any allelic frequency tables relied upon in making statistical estimates in this case.  If the laboratory relied upon published or publicly available data, this request can be satisfied by providing a specific reference to the source.

J.    **Data Files:**  Copies of all data files used and created in the course of performing the testing and analyzing the data in this case.  These files should include all data necessary to (i) independently reanalyze the raw data and (ii) reconstruct the analysis performed in this case.  For analyses performed with GeneScan and Genotyper, or GeneMapper® ID these materials should include:

    – All collection files (such as injection lists and log files for an ABI 310 analysis.
    – All Genescan files, including sample files and project files.
    – All Genetyper files, including templates/macros
    – All Matrix files (ABI 310).
    – Original data for each sample run (.fsa file extension).

K.    **Instances of Unintended DNA Transfer or Sample Contamination:** Copies of all records maintained by the laboratory that document instances of unintended transfer of DNA or sample contamination, such as the detection of unexpected extra alleles in control or reference samples, and any corrective measures taken.

L.    **Accreditation:** Copies of all licenses or other certificates of accreditation held by the DNA testing laboratory.

M.    **Laboratory personnel:** Background information about each person involved in conducting or reviewing the DNA testing performed in this case, including:

– Current resume.
– Job description.
– A summary of proficiency test results.

N.    **A copy of the 'unexpected results' file,** kept pursuant to DAB Guidelines for the 6 months preceding and the 6 months following the testing in the above referenced case.  If the lab is not in compliance with DAB Guideline 14.1.2, a letter on letterhead stationery stating this will suffice.

O.    **Copies of all documents regarding CODIS** upload, as well as any CODIS reports in regard to this case.

2.    All photographs taken at the Salman Alfarisi Islamic Center during the course of the investigation, and all photographs taken at any other location during the investigation, including during the execution of search warrants in this investigation, in their native format, including metadata.  Many of the photographs previously provided in discovery did not include the metadata which includes the original shooting information.

3.    Any and all documentation showing the entire chain of custody of any item of physical evidence obtained during the course of the investigation.  This includes, but is not limited to, photographs of any object taken at any time in their original native format, including metadata, log notes or other records showing the finding and seizing of the item, any evidence logs or other records showing any labeling or numbering of any item of physical evidence, any evidence logs or any other records of any kind taken by any officer

assigned the task of collecting evidence, any records, logs, or other documentation or recording of any item of evidence being transferred, placed into storage, moved, renumbered or relabeled, any record of any item being examined, and any other record whatsoever showing the complete chain of custody of any item seized during the course of the investigation.  As an example, but not by way of limitation, at page 39 of the Inclusive Case Report, Officer James Poole refers to entering an item on an "evidence sheet" on which he assigned a combination letter/number to the items he entered.  This request is generally intended to be all-inclusive and seeks the complete record as it may exist showing the chain of custody of any object.

4.      Corvallis Police Department training manuals, policies, procedures and forms pertaining to the preservation of a crime scene, collection of evidence and the logging, recording, and maintaining of a chain of custody, as were in effect on November 28, 2010, and thereafter.

5.      Any logs or records listing any and all law enforcement personnel who participated in, or were present during, the execution of search warrants for persons in the Crawford family or for the Crawford family property.

6.      Any reports of an Officer Bryant or an Officer Stahl relating to observations made at the Salman Alfarisi Islamic Center during and after the fire and investigation. These officers are mentioned in the Inclusive Case Report at pages 6 and 8.

7.      Any recording or record of any telephone call made to the Corvallis Police Department 911 number by Cody Crawford on December 15, 2010.

8.      The same information of a second 911 call on December 16, 2010 involving Cody Crawford, Robin Crawford, or any known member of the Crawford family.

9.      A video recording showing Cody Crawford in the Yamhill County Jail on December 14, 2010 includes footage of an officer typing while Cody Crawford is speaking. If the officer was making notes of Crawford's statements, those notes need to be produced.

10.      Any records of the Corvallis Police Department showing encounters, arrests, booking, transfers, custody, or other detention of Cody Crawford during December 2010, including but not limited to December 14 through December 16, 2010.

11.      Any transcripts made during the course of this investigation and prosecution of any audio or video recordings.

12.      Any records of police or law enforcement contacts, including interview notes and reports, transcripts or recordings, and criminal histories, involving any of the following people:   Caleb Nathaniel Kontra, Joni Pendry, Julie Bendush, Amy Velsaco, Benjamin Logan, Krystal Raye Saul, Rebecca Nelson, and Jason Schnackenberg.

13.      Any reports, video or audio recordings, or other record of any surveillance, observation, contact with, interviews, or other police action involving Ashley Crawford and/or Marcus Alberado in the days after November 28, 2010.   This includes but is not limited to an interview of Ashley Crawford occurring at 20:10 p.m. on November 28, 2010

by Detective Daniel Duncan of the Corvallis Police Department, as described in the report

of investigation by FBI Special Agents Forrest Schoening, Daniel L. McLoughlin and Monty

Waldron dated November 28, 2010.

14.    Neighborhood canvass reports and/or notes created by the Corvallis Police

Department as referred to at page 28 of the Inclusive Police Report, or by Federal Bureau of

Investigation Special Agents Monty Waldron and Daniel L. McLaughlin as referred to in

their report of those activities.  This request includes any other notes or logs of canvassing

activity, by whomever done.

15.    The defense needs to make a physical inspection of each physical item seized

during the course of the investigation.  This includes not only any item seized either from the

crime scene or the Crawford residence, but also any other physical item seized during the

investigation. as example of this latter would be the shirts seized as having been worn by

Benjamin Logan (Inclusive Case Report at 23).

This the 17th day of July 2012.


/s/ Bryan E. Lessley
Bryan E. Lessley
Attorney for Defendant