IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

CODY SETH CRAWFORD,

    Defendant.

CRIMINAL NO. 6:11-CR-60097-HO

GOVERNMENT'S RESPONSE TO DEFENDANT'S DISCOVERY MOTIONS

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, through William E. Fitzgerald, Assistant United States Attorney, and by Thomas E. Perez, Assistant Attorney General for the Civil Rights Division of the U.S. Department of Justice, through Fara Gold, prosecutor for the Civil Rights Division, hereby submits this Omnibus Response to the Defendant's Discovery Motions.

Defendant's Motion to Compel Discovery

The government has since complied and will continue to comply with its discovery obligations, as controlled by Rule 16 of the Federal Rules of Criminal Procedure. Pretrial discovery is also governed by the *Jencks Act* (18 U.S.C. § 3500), and *Brady v. Maryland*, 373 U.S. 83 (1963), along with cases decided thereunder. Indeed, much of the material provided to date goes beyond what is called for by these rules, and beyond the scope of the time frame identified in the Indictment.

Rule 16 provides for disclosure of five types of information: (1) the defendant's own statements; (2) the defendant's prior criminal record; (3) documents and tangible things which

GOVT'S RESPONSE TO DISCOVERY MOTION - Page 1

are within the government's possession, custody, or control, and which are material to the preparation of the defense, are intended for use as evidence in the government's case-in-chief, or were obtained from or belong to the defendant; (4) results or reports of physical or mental examinations or scientific tests or experiments; and, (5) a summary of the qualifications and opinions of expert witnesses who will testify at trial. The government has complied and will continue to comply with the requirements of Rule 16, and to that end, much of what the Defendant has requested has already been disclosed.

(1) *Documents Related to DNA*

The Defendant requests an order for specific data, both paper and electronic, lab notes and records, and other documentation, of the flashlight allegedly located at the scene of the crime, the DNA results for which are reported in a report of an examination from the Federal Bureau of Investigation dated January 26, 2011. The Defendant specifically requests the case file, laboratory protocols, work instructions, chain of custody, quantification, electropheragrams, software, macros, STR frequency tables, data files, instances of unintended DNA transfer or sample contamination, accreditation, laboratory personnel, a copy of the "unexpected results" file and copies of all documents regarding CODIS.

The government is in receipt of a box of laboratory materials including hundreds of pages of tables, charts, reports, and data files, along with the curricula vitae of the laboratory personnel who conducted the tests. Included in the same batch of materials are numerous CDs containing additional data and records that appear to fit within the scope of the defendant's request.

Aware of its discovery obligations, the government will voluntarily turn over to the defendant all of these laboratory materials. However, regarding the Defendant's request for instances of unintended DNA transfer or sample contamination, the request does not specify a

GOVT'S RESPONSE TO DISCOVERY MOTION - Page 2

particular time period and unless the defendant so limits his request, the Court should deny the Defendant's motion on the basis of materiality.

(2) *Photographs*

The defendant requests an order for photographs in their "native format" to include metadata. The government has turned over duplicates of photographs in its possession. The admissibility of photographs is governed by Federal Rules of Evidence 1001 and 1003, which allow for the admissibility of duplicates "unless (1) a genuine question is raised as to authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original." F.R.E. 1003. To that end, the duplicates that have been provided, and those that the government will continue to provide, satisfy the government's discovery obligation, unless or until a question arises as to their authenticity.

*Subsections (3), (4), (5), (6), (7), (8), (11), (13), (14)*

As noted above, the government is aware of its discovery obligation pursuit to Rule 16, *Brady,* and *Giglio*, and will turn over everything in its possession in accordance with this obligation.

*(9) Interview notes of Police Officers*

The rough notes of law enforcement officers are generally not discoverable, unless under *Brady* if the prosecutor perceives, or the defendant can raise, a "colorable claim that the rough notes contain evidence favorable to the defendant and material to his claim of innocence or to the applicable punishment" that had not been included in any formal report provided to the defendant. *United States v. Taylor*, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986) (citing *United States v. Griffin*, 659 F.2d 932, 939 (9th Cir. 1981)). "'[M]ere speculation about materials in the government's files [does not require] the district court . . . under *Brady* to make the materials

available for [defendant's] inspection.'" *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) (citation omitted). To that end, as set forth below, the government is aware of its obligations pursuant to *Brady* and will comply accordingly.

      (10)    *Law enforcement contacts with the Defendant during December 2010.*

The government has already provided documentation regarding the Defendant's contact with law enforcement on December 2010. To the extent that any additional information exists, the government is aware of its discovery obligations.

      (11)    *Material associated with listed individuals*

The Defendant lists the names of eight persons for whom he requests interview notes and reports, transcripts or recordings, and criminal histories. The government has already provided documentation regarding a few of the persons on the list. However, many of the names are new to the government and the Defendant has failed to show that these persons had anything to do with the investigation. Accordingly, the government moves this Court to deny the Defendant's motion.

<u>Defendant's Motion for Disclosure of Prior Bad Acts</u> (Doc #37)

The admissibility of prior bad acts is governed by Rule 404(b) of the Federal Rules of Evidence. That Rule requires that if the government intends to introduce evidence of prior bad acts, "the prosecution in a criminal case shall provide reasonable notice in advance of trial…of the general nature of any such evidence it intends to introduce at trial." <u>F.R.E.</u> 404(b). The Defendant contends that he requires formal notice by the government so that he may properly file motions in limine. Yet the government has disclosed reports, statements, and other evidence of prior bad acts as part of its ongoing discovery obligation. Therefore, there is nothing that bars the defendant from properly filing his motions. Moreover, the defendant will have the

opportunity - and undoubtedly seize that opportunity - to object to the admissibility of prior bad acts if the government files a notice pursuant to F.R.E. 404(b).

The government moves this Court to deny the Defendant's motion because the government is aware of its obligations under the Federal Rules of Evidence and will give notice to the Defendant accordingly.

Defendant's Motion for Disclosure of Grand Jury Testimony (Doc #38)

The *Jencks Act* provides that no statement or report of any "Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until such witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a). Unless exculpatory, statements of witnesses and potential witnesses are generally "unavailable until such witnesses have testified at trial." *United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986). Statements of prospective government witnesses who do not testify at trial are not discoverable at all under the *Jencks Act*. *Cadet*, 727 F.2d at 1469; *United States v. Mills*, 641 F.2d 785 (9th Cir. 1981).

The *Jencks Act* narrowly defines "statement" as –

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
>
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>
> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e). Accordingly, investigative reports of law enforcement agencies often will not constitute *Jencks Act* material, even if the reports contain summaries of prospective witnesses' statements. Unless the summaries were shown to and were adopted or approved by

GOVT'S RESPONSE TO DISCOVERY MOTION - Page 5

the witnesses, or unless the reports are substantially verbatim transcriptions of the witnesses' statements, they are not *Jencks Act* material and are not discoverable.

Despite these limitations, the government has provided the defendant with reports of interviews of its prospective witnesses including, but not limited to, family members and acquaintances of defendant. The government will also continue to provide additional witness statements when and if they become available. This is beyond that which the government is technically required to produce, even after a witness has testified at trial, under a strict interpretation of the *Jencks Act*. *United States v. Claiborne*, 765 F.2d 784, 801 (9th Cir. 1985) (FBI summaries of witness interviews are not normally *Jencks Act* material). *See also United States v. Bobadilla-Lopez*, 954 F.2d 519, 522 (9th Cir. 1992) (to be discoverable under the *Jencks Act*, statements must "reflect the witness' own words" and must "also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context").

As such the government is aware of its obligations and therefore, will disclose grand jury testimony in accordance with the *Jencks Act*. The government requests that this Court deny the Defendant's motion.

Defendant's Motions for Excupatory and for Evidence Impeaching Information
(Docs #39 and #41)

Under *Brady v. Maryland*, the government must disclose to the defendant exculpatory evidence which is "material either to guilt or to punishment. . . ." *Brady*, 373 U.S. 83, 87 (1963). *Brady* does not, however, create "a constitutional duty to disclose every bit of information that might affect the jury's decision; [the government] need only disclose information favorable to the defense that meets the appropriate standard of materiality." *United States v. Little*, 753 F.2d 1420, 1440-41 (9th Cir. 1984). *See also United States v. Agurs*, 427 U.S. 97, 106 (1976) ("there

GOVT'S RESPONSE TO DISCOVERY MOTION - Page 6

is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor").

*Brady* also encompasses evidence affecting the credibility of key government witnesses. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972). While such evidence includes "criminal records of government witnesses, favors and deals given to government witnesses, and grants of immunity given to government witnesses," the government "need not disclose this material prior to the direct examination of the relevant witness." *United States v. Laurins*, 660 F. Supp. 1579, 1584 (N.D. Cal. 1987), *aff'd*, 857 F.2d 529 (9th Cir. 1988). The government is aware of its obligations under *Brady* and *Giglio* and will provide that material where and when it is appropriate to do so. As such, the government moves the Court to deny the Defendant's motions seeking both impeaching and exculpatory information.

<u>Defendant's Motion to Prohibit Destruction or Destructive Testing of Any Object</u> (Doc. #40)

The Defendant's objection to the destructive of evidence during scientific testing and his alternative request to be permitted to observe such testing are both without merit. Federal courts consistently have rejected defendants' objections to the consumption of a sample during scientific testing. *See, e.g., Garrett v. Lynaugh*, 842 F.2d 113, 116 (5th Cir. 1988); *United States v. Stevens*, 935 F.2d 1380, 1387-88 (3d Cir. 1991); *United States v. Jackson*, 2012 U.S. Dist. LEXIS 7786, at *1-4 (D. Kan. Jan. 23, 2012); *United States v. Rogers,* 2010 U.S. Dist. LEXIS 128049, at *7-16 (D. Kan. Dec. 3, 2010); *United States v. Roach*, 2007 U.S. Dist. LEXIS 59245, at *4-6 (D. Kan. Aug. 13, 2007); *United States v. Price*, 1999 U.S. Dist. LEXIS 22292, at *28-38 (E.D. Oka. Jan. 14, 1999); *Kowalak v. Scutt*, 712 F.Supp.2d 657, 695-96 (E.D. Mich. 2009); *United States v. Williams*, 2008 U.S. Dist. LEXIS 105648, at *11-12 (C.D. Cal. Dec. 23, 2008). In fact, the United States has not located a single case where a federal court has

prohibited, or allowed a defendant to otherwise interfere with, such testing. Courts instead have held that a defendant cannot raise a successful constitutional challenge to the testing. Given the lack of such a legal claim, courts also have ruled that a crime lab is permitted to conduct the testing through the protocols it normally would follow.

In each instance where the question has been raised, these courts have applied the standards that generally govern issues involving the destruction of evidence. The issue therefore is controlled by the Due Process Clause of the Fifth Amendment. *See, e.g., Rogers,* 2010 U.S. Dist. LEXIS 128049, at *916 (following *United States v. Stevens*, 935 F.2d 1380, 1387-88 (3d Cir. 1991). Where, if anything, the issue is the consumption of ***potentially*** exculpatory evidence, a defendant faces a high bar – he cannot establish a violation of his rights unless he can demonstrate bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). "[C]ourts have consistently found no bad faith where evidence was destroyed during scientific testing." *Williams*, 2008 U.S. Dist. LEXIS 105648, at *15.[1] Courts likewise have rejected arguments attacking the United States' good faith where, if the issue were to arise, the prosecution only seeks to consume all the evidence because that is the only way to sufficiently test the sample. *See id.; Stevens,* 935 F.2d at 1387-88. In such cases, there is no colorable claim

---

[1] Where evidence has apparent exculpatory value prior to testing, the test established in *California v. Trombetta*, 467 U.S. 479, 489 (1984) applies instead. Pursuant to that test, a due process violation occurs where destroyed evidence both "(1) possess[es] an exculpatory value that was apparent before the evidence was destroyed, and (2) [is] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Courts have applied the *Youngblood* test in cases such as the one before the Court because there is no way to know whether DNA testing will produce exculpatory evidence, inculpatory evidence, or simply inconclusive evidence. *See, e.g., Rogers,* 2010 U.S. Dist. LEXIS 128049, at *9-10 (applying *Youngblood* because the defendant's statement that he "reasonably believes" evidence will be exculpatory is insufficient to show it actually will be, and no party can know what DNA testing will reveal until the testing is complete).

that evidence is lost because the government wants to thwart a defendant's ability to test the DNA or otherwise is acting in bad faith.  *See id.*

In a perfect world, there always would be a large enough sample to preserve sufficient material for subsequent testing.  But this is not an uncommon problem in crime investigations.  When it happens, there is no way to determine whether a sample will inculpate or exculpate a defendant until the testing is done.  It follows that there cannot be a finding of bad faith.  *See, e.g., Rogers,* 2010 U.S. Dist. LEXIS 128049, at *15-16 ("Because the government cannot know the exculpatory value of the evidence before it is tested, consuming all the evidence, if necessary to create a useful DNA profile, cannot constitute bad faith.").  The United States is responsible for investigating crimes like this, and it must be permitted to do so in an effective manner.

Unable to raise a successful challenge to consumption of a sample to make DNA testing possible, the Defendant also is not in a position to demand oversight over, or place restrictions on, the manner in which the testing proceeds.  Rather, his due process rights are fully protected by the ability to challenge the testing procedures through cross-examination or by impeaching the reliability of the tester's methods.  Either option satisfies the Fifth Amendment.  *See Trombetta*, 467 U.S. at 489-90 (providing that cross-examination is sufficient to protect a defendant's due process rights); *Rogers,* 2010 U.S. Dist. LEXIS 128049, at *16.  And lacking a legal basis to challenge the consumption of the evidence through testing at all, a defendant certainly cannot demand a particular process for that testing.  *See Jackson*, 2012 U.S. Dist. LEXIS 7786, at *3-4.  Therefore, the government requests that the Defendant's motion be denied.

WHEREFORE, having filed this Response to the Defendant's Discovery motions, the United States respectfully moves the Court to deny the Defendant's motions.

DATED this 3rd day of August, 2012.

Respectfully submitted:

| | |
|---|---|
| S. AMANDA MARSHALL | THOMAS E. PEREZ |
| United State Attorney | Assistant Attorney General |
| | Civil Rights Division |
| /s/William E. Fitzgerald | |
| WILLIAM E. FITZGERALD | |
| Assistant United States Attorney | /s/Fara Gold |
| United States Attorney's Office | FARA GOLD |
| 405 E. 8th Avenue, Ste 2400 | U.S. Department of Justice |
| Eugene, Oregon 97401 | Civil Rights Division, Criminal Section |
| (541) 465-6771 | 601 D Street NW #5200 |
| | Washington, DC 20530 |
| | (202) 514-3204 |