Bryan E. Lessley, OSB #92081
Assistant Federal Public Defender
859 Willamette Street, Suite 200
Eugene, Oregon  97401
(541) 465-6937 Telephone
(541) 465-6975 Facsimile
Bryan_Lessley@fd.org

Attorney for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 6:11-cr-60097-AA-1 |
| Plaintiff, | |
| v. | DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING STATEMENTS AND CONDUCT TO BE SUPPRESSED |
| CODY CRAWFORD, | |
| Defendant | |

On September 25, 2014, the court directed Mr. Crawford to file a supplemental brief indicating what specific statements and conduct the defendant seeks to suppress relevant to the suppression hearing scheduled for October 7, 2014.

Mr. Crawford seeks to suppress *all* of his conduct and statements from the period December 14, 2010, until April 27, 2011 from evidence at his trial.  That is to say the government should be able to introduce *no* evidence at trial about Mr. Crawford's statements and conduct during that period of time.  For reasons stated below, it is difficult or impossible to list

Page 1 DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING STATEMENTS AND
        CONDUCT TO BE SUPPRESSED

all of the specific statements, or all of the specific acts, that he made during that time that are the subject of the motion to suppress.

By way of further background, Mr. Crawford is accused of having set fire to a back office in the Salmon al Farisi Islamic Center in Corvallis during the early morning hours of November 28, 2010. Mr. Crawford, who lived with his mother, son, and others a few blocks away from the mosque, became a primary suspect over the next hours and days. Those events are described at pages 3-5 of the Motion to Suppress.

There is no claim that Mr. Crawford's mental state was impaired at the time the fire occurred or the investigation began. In the early morning hours of November 29, 2010, Mr. Crawford was interviewed by Officer James Poole of the Corvallis Police Department (Defense Exhibit F). The audio recording of that interview does not show that Mr. Crawford was at that time in an impaired mental state. Dr. Scott Reichlin, a forensic psychiatrist who recently retired as the Director of Forensic Evaluative Services at the Oregon State Hospital, having listened to the recording, has stated that Mr. Crawford's responses at that time were calm, mentally organized, and rational. (Defense Exhibit I at 5).

Mr. Crawford's mental state deteriorated badly over the next two weeks, until, on December 14, 2010, he engaged in a series of behaviors described by witnesses, police personnel, medical professionals, and other as "bizarre," "so weird/outlandish that they did not make sense," "delusional," and "psychotic." These terms are used over and over again by persons describing his conduct over the next several months, during most of which he was civilly committed to mental hospitals. The chain of events is described in detail in Defendant's Motion to Suppress at pages 5-17. The events began with "bizarre" behavior at a Blockbuster video store in McMinnville, after he had jumped out of his mother's car and run away. During the

Page 2 DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING STATEMENTS AND
         CONDUCT TO BE SUPPRESSED

period December 14-16 he had multiple police encounters and multiple trips to hospital emergency rooms, either in the custody of police or being taken there by his mother, all resulting from repeated instances of bizarre behavior.

Some of these events were recorded. There is a video of Mr. Crawford in the booking room of the Yamhill County Jail on the evening of December 14 after the Blockbuster incident. There is another video of Mr. Crawford in the back of a police car having an apparent seizure on the afternoon of December 16, while being transported to Good Samaritan Regional Medical Center. There is also an audio recording of Mr. Crawford at Good Samaritan Hospital in the company of police on the afternoon of December 16. There are also multiple written reports showing conduct and statements by him.

Mr. Crawford was held in custody from December 16 onward. On December 23, 2010 he was civilly committed and spent the next month at Good Samaritan until being transferred to Portland Oregon State Hospital January 14, 2011. He was eventually discharged from POSH on April 27, 2011.

There are thousands of pages of hospital records from this period of civil commitment. These records are replete with instances of disruptive, destructive behavior and bizarre, uncontrolled comments. They are described at some length at pages 10-17 of the Defendant's Motion to Suppress.

Some of the statements made by Mr. Crawford can simply be categorized as bizarre or nonsensical – references to bunnies, Miss May down by the bay, donkeys named Javio, mooses on the loose, and similar nonsensical ramblings. Bunnies are a particularly recurrent theme. Interspersed with such comments are other comments with religious overtones – references to "secret muslims," "jihadists," "Jesus," "revelation," lady liberty getting raped, and other repeated

recurrences.  There are dozens, perhaps hundreds, of statements appearing in police reports, recordings, or records over this period of time.   There are similarly dozens of destructive or bizarre incidents – urinating in his mouth, tearing electric cords from under sinks, ripping off door handles, pantomiming people's conversations and facial expressions, and many others.

From the time these events begin, the medical documentation contains diagnoses of psychosis.  Nursing notes consistently refer to "psychotic plus delusional," "possible delusions," "aggressive psychotic behavior," "delusional," and "current delusional state with very poor insight."  His ultimate Axis I diagnosis at Good Samaritan, at the time of his transfer to Portland Oregon State Hospital on January 14, was bipolar disorder, not otherwise specified, and alcohol dependence.

The same behavior and the same diagnoses persisted at POSH for the first several months, eventually waning in March 2011, leading to his discharge on April 27.  Assessments and diagnoses included "history of intermittent manic psychosis," psychosis NOS, and bipolar disorder with manic features.

The Motion to Suppress alleges that none of his statements and none of his behaviors during the period of this psychotic breakdown, starting on December 14, 2010, and continuing throughout his hospitalization, should be admissible against him because none of them were the result of rational thought processes.  Dr. Mesibov's opinion states:

> Cumulatively the circumstances following the mosque fire and the tactics typical in interrogations of a prime suspect for a crime of this nature drove Cody into a very precarious state made even worse by the alcohol he then consumed, in an attempt to cope with all that was happening.  In addition to the questioning the continual presence of the police and all the publicity leading many neighbors to talk about the mosque fire and imply Cody was responsible for it were extremely difficult for Cody to cope with.  As a result of these events Cody went on a drinking binge and retreated into a state described by the current diagnostic system (DSM-IV-TR) as Brief Psychotic Disorder or Brief Reactive Psychosis, which occurs in response to major trauma and/or major stress.  During period of

Page 4 DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING STATEMENTS AND
         CONDUCT TO BE SUPPRESSED

> Brief Psychosis there is considerable disorientation, cognitive confusion, disorganized language, hallucinations, and a loss of contact with reality. There is also a disruption in normal sleep routines. Cody's statements during this time of sleepless disorientation and psychosis cannot be taken to reflect his real feelings or thoughts. Hospital reports during this period frequently refer to Cody's psychotic state.

(Defense Exhibit E at 11). Similarly, Dr. Scott Reichlin, the forensic psychiatrist, who actually examined Mr. Crawford while Mr. Crawford was in the throes of another psychotic breakdown in May 2013. Dr. Reichlin's interview with Mr. Crawford occurred at the Salem Hospital, where Mr. Crawford was then committed. Dr. Reichlin's opinion of Mr. Crawford's mental capacity during December 14, 2010 through April 27, 2011 is similar (or even identical) to Dr. Mesibov's:

> For the most part I concur with the conclusion of Dr. Mesibov. There is no doubt that Mr. Crawford suffered a severe mental health deterioration in mid-December 2010, meaning that he experienced psychotic symptoms which made it impossible for him to function in any capacity in the community, and which created the necessity for a psychiatric hospitalization that lasted a number of months. At the time of the hospital admission he showed bizarre and irrational behaviors, incoherence, emotional states that vacillated widely and rapidly, and paranoid delusions. These symptoms continued for some months, gradually subsiding until his discharge in April 2011. In this psychiatric state there is no confidence that the statements he made had any relevance to his usual, rational ideas or thoughts because of the distortion that psychotic thinking has on verbal output. Likewise, his behavior was profoundly affected; his ongoing aggression, disruption, and bizarre actions in the hospital did not reflect his typical baseline behavior, which would be his normal, average and day-to-day activity in a typical community environment.

(Defense Exhibit I at 2).

As just referenced, Mr. Crawford has suffered psychotic episodes since the events in question here, which have resulted in additional information about his behavior, and which have resulted in additional diagnoses and professional opinion. On January 14, 2013, Mr. Crawford engaged in an altercation with his brother-in-law, Marcus Alberado, in the Alberado home in Polk County, resulting in Polk County charges being brought. Mr. Crawford suffered another

Page 5 DEFENDANT'S SUPPLEMENTAL BRIEF REGARDING STATEMENTS AND
         CONDUCT TO BE SUPPRESSED

breakdown in May, 2013, resulting in a brief commitment to Salem Hospital (during which Dr. Reichlin saw him), and then resulting in his engaging in destructive conduct at his mother's home on June 17, 2013. That behavior consisted of his destroying his mother's piano and some other property, and holding off the police with a slingshot. The combination of these incidents resulted in four more evaluations being done of Mr. Crawford, submitted as Defense Exhibits G, H, K and L. Mr. Crawford was found incompetent to stand trial, underwent a period at Oregon State Hospital when his competency was restored, and then entered a plea of guilty but insane as the resolution of his Polk County cases. He has been committed to the custody of the Oregon Health Authority and is currently confined at Oregon State Hospital again. (Defense Exhibits M and N).

## CONCLUSION

Mr. Crawford's Motion To Suppress sets out at great length the legal reasons why statements and conduct engaged in by someone in a psychotic state cannot be admitted against him at trial to show his motives, intent, or actions. (Defendant's Motion To Suppress at 26-45). The point of this Supplemental Brief, as ordered by the court, is to set out the specific statements and conduct Mr. Crawford seeks to have suppressed.

It is impossible to do so. There are so many statements during this period, and so many instances of behavior, that listing some would run the risk of omitting others that might be buried in a report, or in a medical record. The point is that nothing Mr. Crawford said or did during this entire period of time bears any relevance to whether he is more or less likely to have started the fire at the mosque. It was irrational, psychotic behavior that was not representative of, or reflective of actual thoughts, motives, or actions. *All* of Mr. Crawford's statements and conduct

during this period of time – again, December 14, 2010 through April 27, 2011 – should be suppressed for the reasons set out in Mr. Crawford's Motion.

THIS the 3d day of October, 2014.

/s/ Bryan E. Lessley  
Bryan E. Lessley  
Assistant Federal Public Defender