BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
WILLIAM E. FITZGERALD, OSB #915151
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771
bud.fitzgerald@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| UNITED STATES OF AMERICA, | Case No. 6:11-CR-60097-001-AA |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | [Sentencing: 3/02/2016; 10:00 a.m.] |
| CODY SETH CRAWFORD, | |
| Defendant. | |

The United States of America, by and through its undersigned attorneys, Billy J. Williams, United States Attorney, District of Oregon, William E. Fitzgerald, Assistant United States Attorney, and by Vanita J. Gupta, Principal Deputy Assistant Attorney General, Civil Rights Division, through Fara Gold, Trial Attorney, Civil Rights Division, files this sentencing memorandum to aid the Court at sentencing.

PAGE 1 - GOVERNMENT'S SENTENCING MEMORANDUM

# FACTS

A. **Crime Scene Investigation**

On November 28, 2010, at approximately 2:16 a.m., a police officer saw smoke emanating from the Salman Alfarisi Islamic Center, a mosque in Corvallis, Oregon. The officer called the fire department and a fire crew quickly extinguished the fire.

Fire investigators determined the fire was intentionally set and the fire was started within hours of reports of a foiled terror plot at the Portland Christmas Tree Lighting Ceremony. The person arrested in connection with the terror plot, Mohamed Mohamud, was known to occasionally worship at the Salman Alfarisi Islamic Center.

Investigators surmised that a person shattered a window at the mosque, dispersed flammable liquid inside the broken window and ignited the liquid, causing fire damage in the amount of $50,000. Police recovered a flash light on the ground near the broken window.

B. **Interview of Defendant**

As part of the investigation, police and FBI agents interviewed people who lived near the mosque. An FBI agent interviewed the defendant, who lived across the street from the mosque. During the interview, the defendant denied knowing anything about the fire but volunteered that his flashlight had been stolen from his front porch.

Investigators returned to the defendant's house a few hours later. They showed the defendant a picture of the flashlight found at the scene of the arson and the defendant admitted that his flashlight looked like the one in the picture. Despite his mother's encouragement to deny ownership, the defendant insisted the flashlight was his. A DNA match would later confirm it was the defendant's flashlight at the crime scene.

When asked why he thought someone might try to burn down the mosque, the defendant replied, "Because they don't like Muslims."

C. **Facebook Postings**

On November 29, 2010, police executed a search warrant at the defendant's residence in Corvallis, Oregon. A search of the garage found items consistent with those used to make the ignition device in the arson. The defendant's laptop computer was seized and examined.

On the computer, investigators found incriminating postings on defendant's Facebook page. On November 27, 2010, at 11:59 p.m., the defendant had posted "that guy on the news used to go to the mosque near my house," referencing the individual accused of orchestrating the Portland Terror Plot. Seven minutes later at 12:06 a.m. on November 28, 2010, Crawford posted "I ha te the ji-had'st, they should go and realize what life is about!!!This guy on the news was a really bad guy!!! He went to the mosque right in front of my house here in corvali, I even remember when he walked by my house one time, with two guys that looked like cops, I see them here every week." The arson

PAGE 3 - GOVERNMENT'S SENTENCING MEMORANDUM

occurred about two hours after that posting.

On November 28, 2010, at 3:39 p.m., after the FBI came to the defendant's house for the first time as part of the canvass, the defendant posted, "crazy how things happen so close to home." The account was subsequently deactivated at 6:36 p.m., soon after law enforcement came back to the defendant's house and he identified his flashlight.

### D. Arrest in McMinnville on December 14, 2010

On December 14, 2010, the defendant was arrested for causing a disturbance at a Blockbuster Video store and at a 76 gas station in Yamhill County, Oregon. An employee at the video store reported that he observed the defendant harassing customers who were outside getting gas. The defendant was shining a flashlight at people in their cars, talking about terrorists and Muslims and stating that the FBI and CIA did not know he existed.

The defendant subsequently entered the store. According to a store employee, the defendant appeared to be intoxicated because he was very talkative, had slurred speech, and was stumbling. The employee heard the defendant talking about Muslims and terrorists. The defendant told the employee to "watch out for their red eyes…that's how you know if you're standing in front of one (a Muslim)." The defendant also stated "they will kill you," and he talked about being angry that the events of 9/11 were allowed to happen.

Three officers from the McMinnville Police Department responded and found the defendant being uncooperative. After an officer handcuffed the defendant and stood him near a patrol vehicle, the defendant explained, without prompting by interrogation, that only Christians could understand him because he is a Christian warrior. The defendant then announced, "You will never know the truth about the mosque."

As a result of that statement, the responding officers realized that the defendant was the same person who was the primary suspect in the mosque burning. The defendant then continued to rant about being a Christian and his ideological beliefs about Muslims and homosexuality.

Prior to being booked into the Yamhill County Jail, the defendant was transported to Willamette Valley Medical Center for medical clearance. Once at the hospital, the defendant began making threats to the responding officers and engaging in destructive behavior. According to one of the officers, in the midst of his rants, the defendant extended his middle fingers and placed them into a cross and stated, "You look like Obama. You are Muslim like him. Jihad goes both ways. Christians can Jihad too." The defendant further claimed that as a Muslim, this officer would burn in hell with other Muslims and would never be made a Christian warrior.

## **NOLO CONTENDERE PLEA**

On November 3, 2015, the defendant pled nolo contendere to Count 1 of a two-count Indictment. Count 1 alleged, in substance, that on or about November 28,

2010, in the District of Oregon, defendant Cody Seth Crawford did intentionally deface, damage and destroy and attempt to deface, damage and destroy, religious real property, because of the race, color, and ethnic characteristics of an individual and individuals associated with that property; that is, the defendant did cause fire to deface, damage, and destroy the Salman Alfarisi Islamic Center, located in Corvallis, Oregon; in violation of 18 U.S.C. § 247(c).

The maximum sentence is 20 years in prison, a $250,000 fine, a three-year term of supervised release, and a mandatory $100 special assessment.

## SENTENCING CONSIDERATIONS

### A. RELEVANT AUTHORITY

"No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

For sentencing purposes, the Court must first determine the guideline range and then decide a sentence that is sufficient, but not greater than necessary, to accomplish the ends of sentencing. The sentence should: (1) reflect the seriousness of the offense; (2) afford adequate deterrence to criminal conduct; (3) protect the public from further crimes; and (4) provide the defendant with needed educational or vocational training,

medical care or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

B. **GUIDELINE ANALYSIS**

The advisory guideline calculations are governed by the 2015 edition of the United States Sentencing Guidelines Manual, hereinafter "U.S.S.G."

1. **Base Offense Level (20)**

Pursuant to U.S.S.G. §§ 2H1.1(a)(1) and 2K1.4, the base offense level is 20, because the offense of conviction is § 247(c) and the underlying offense is arson that endangered a structure other than a dwelling.

2. **Hate Crime Motivation (+3)**

Under U.S.S.G. § 3A1.1(a), a 3-level increase applies if the court determines beyond a reasonable doubt that the defendant intentionally selected the victim or property as the object of the offense of conviction because of the actual or perceived race or religion of any person.

3. **Acceptance of Responsibility (-2)**

Pursuant to U.S.S.G. § 3E1.1, the defendant is entitled to a 2-level reduction but is not entitled to a third level because he did not assist authorities in the investigation and prosecution of his own misconduct by timely notifying authorities of his intention to plead guilty.

## 4. Advisory Guideline Range

A total offense level of 21, together with Defendant's criminal history category of I, produces an advisory guideline range of 37 to 46 months.

## RECOMMENDATION

The defendant stands convicted of a violation of 18 USC § 247(c), which makes it a crime to destroy religious property simply because of those who worship inside. In this instance, the evidence proves that the defendant set fire to a mosque because its congregants were Muslim. The United States Sentencing Guidelines recommends a prison sentence, and under facts such as these, the government would typically advocate for such a sentence. However, because of the unique factors in this case, the government joins with counsel for the defendant and recommends that the defendant receive a probationary sentence with the conditions set forth below and in the PSR.

The government does not make this recommendation lightly, but does so with great consideration for the defendant's significant mental health issues and great deference to the leaders of the Salman Alfarisi Islamic Center.

The government's concerns are two-fold: that the community be kept safe and that justice be served by ensuring that the defendant's sentence holds him accountable and vindicates the interests of the congregants who innocently and peacefully worshipped at the mosque. To the first point, the defendant has been involuntarily hospitalized at the Oregon State Hospital for 20 months, with assurances that he will

remain there until the Oregon State Hospital Authority deems that he is no longer a threat to others and can safely reintegrate into society. A sentence of probation that requires the defendant to adhere to the mandates of the Hospital Authority will further ensure community safety.

The government also urges the court to impose the special conditions set out in the plea agreement: (1) Adherence to conditions imposed while under the supervision of OHA and follow-up mental health treatment at the direction of federal probation and the court. To the extent that recommended treatment of federal probation conflicts with the supervision of OHA, the court shall resolve the conflict; (2) The defendant shall not use alcohol or non-prescribed intoxicants, and alcohol treatment as federal probation deems appropriate; (3) Regular status appearances before the court and/or reports filed with the court, to include advising the court of any change in living situation, change in medication; and any disciplinary complaints and/or referrals; (4) The defendant shall not possess firearms and/or weapons and the defendant may not reside in a location where there are readily accessible firearms, even if those firearms are locked up; (5) The defendant shall not return to the mosque and must stay more than 500 feet from the mosque.

These conditions, namely the prohibition from alcohol consumption and the restricted access to weapons are essential to keeping and maintaining the safety of the defendant, his family, and the community in which he will ultimately live. Further, it is

PAGE 9 - GOVERNMENT'S SENTENCING MEMORANDUM

the wish of the leaders of the mosque to move on from this incident that occurred more than five years ago. Although the aftermath of the arson saw local religions stand in support of the mosque in an effort to help it heal and rebuild, the arson represented a time of intolerance from which the Islamic community has since recovered and offered forgiveness.

The government's recommendation is not intended to minimize the gravity of the defendant's actions or the nature of his crime. Rather, its purpose is to promote the best interests of everyone involved.

Dated this 23rd day of February, 2016.

| | |
|---|---|
| BILLY J. WILLIAMS<br>United States Attorney<br>District of Oregon | VANITA J. GUPTA<br>Principal Deputy<br>Assistant Attorney General<br>Civil Rights Division |
| */s/ William E. Fitzgerald*<br>_____<br>WILLIAM E. FITZGERALD<br>Assistant United States Attorney<br>United States Attorney's Office<br>405 E. 8th Avenue, Ste 2400<br>Eugene, Oregon 97401<br>(541) 465-6771 | */s/  Fara Gold*<br>_____<br>FARA GOLD<br>Trial Attorney<br>U.S. Department of Justice<br>Civil Rights Division, Criminal Section<br>601 D Street NW #5200<br>Washington, DC 20530<br>(202) 514-3204 |